**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

DAVID CRANMER,

           Plaintiff,

vs.

COLORADO CASUALTY INSURANCE COMPANY, *et al.*,

           Defendants.

Case No. 2:14–cv–645–MMD–VCF

**ORDER**

      This matter involves David Cranmer's bad-faith insurance action against Colorado Casualty Insurance Company. Before the court is Colorado Casualty's Motion for a Protective Order (#18[1]). Cranmer opposed (#19); and Colorado Casualty replied (#21). Also before the court is Cranmer's Motion to Compel (#20). Colorado Casualty opposed (#22) and Cranmer failed to reply. For the reasons stated below, Colorado Casualty's Motion for a Protective Order is granted and Cranmer's Motion to Compel is granted in part and denied in part.

**BACKGROUND**

      Cranmer's action presents one question: whether Colorado Casualty Insurance Company engaged in bad faith by failing to promptly pay uninsured-motorist insurance benefits under Cranmer's policy. (*See* Compl. #1-1). On February 13, 2012, Cranmer was involved in an automobile accident. (*Id.* at ¶ 7). The other driver was at fault and underinsured. (*Id.* at ¶¶ 7–8). Cranmer filed a claim for uninsured-motorist insurance benefits with his insurance carrier, Colorado Casualty Insurance Company. (*Id.*) The company stated, however, "that there was no coverage under the policy." (*Id.* at ¶ 11). Approximately two years later, Colorado Casualty "offered $15,000.00 in coverage, but improperly

---

[1] Parenthetical citations refer to the court's docket.

requested a full release for this payment." (Pl.'s Mot. to Compel (#20) at 6:11–12). This, Cranmer alleges, constitutes bad faith.

On January 8, 2013, Cranmer commenced this action. The parties are currently in the midst of discovery. On September 11, 2014, Colorado Casualty filed the instant Motion for a Protective Order; and on October 6, 2014, Cranmer filed the instant Motion to Compel. The motions raise two discrete questions: (1) whether Colorado Casualty's responsive documents contain trade secrets that are entitled to protection under Federal Rule of Civil Procedure 26(c) and (2) whether thirty five of Cranmer's discovery requests are "relevant" within the meaning of Rule 26(b). Both questions are discussed below.

## DISCUSSION

### I. Colorado Casualty's Motion for a Protective Order

The court begins with Colorado Casualty's Motion for a Protective Order. It concerns three of Cranmer's requests for production of documents. (Def.'s Opp'n (#19) at 3:12–20). They seek (1) "[a]ny and all documents . . . used to train or assist Defendant's injury claims personnel in processing claims;" (2) "[a]ll Defendant's documents related to an insurer's duty of good faith or the obligation to avoid bad faith conduct in handling claims;" and (3) "[a]ll Defendant's documents related to unfair claims handling practices or the rules related to unfair claims handling practices." (*Id*.)

Colorado Casualty does not oppose production or argue that Cranmer's requests are disproportional or overbroad in light of "the issues at stake." *See* FED. R. CIV. P. 26(b)(2)(B)–(C). Rather, it merely requests entry of a confidential-discovery protective order to safeguard trade secrets from public disclosure. (Def.'s Mot. (#18) at 1). Cranmer proffers a variety of arguments in opposition to the motion. Each is predicated on a misunderstanding of law. Therefore, the court begins with a general discussion of protective orders.

### A. *Protective Orders in Federal Practice*

There are three general categories of protective orders. The first category protects parties from producing discovery in response to a discovery request under Rules 30 and 33 through 36. *See, e.g.*, FED. R. CIV. P. 26(b)(2), (c)(1)(A). The second category protects a person's privacy interests by preventing the public from accessing court records. *See, e.g.*, FED. R. CIV. P. 26(c)(1)(F)–(H). The third category involves private agreements that generally require information obtained during discovery to be kept confidential. *See, e.g.*, FED. R. CIV. P. 26(c)(1). Generally, a District Court has "broad discretion" to enter any of these protective orders. *See Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

However, not all protective orders are created or treated equally. When deciding whether to enter an order protecting a party from producing discovery, the court's inquiry primarily focuses on relevance, proportionality, and harm to the producing party. *See, e.g.*, FED. R. CIV. P. 26(b)(1)–(2), (c)(1)(A); *U.S. Equal Emp't Opportunity Comm'n v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006). When deciding whether the public should be prevented from accessing court records, the court's inquiry focuses on the public's right of access to judicial records. *See, e.g.*, *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006); *see also* LR 10-5. Finally, when deciding whether to enter a stipulated confidentiality agreement the court generally defers to the parties' stipulation, if (1) good cause exists and (2) the agreement does not infringe the public's right of access. *See* FED. R. CIV. P. 26(c)(1) (requiring parties to "meet and confer" and attempt to accomplish Rule 26(c)'s goals by private agreement); FED. R. CIV. P. 29(b) (permitting parties to stipulate to alternative discovery procedures).

### B. *Colorado Casualty's Motion for a Protective Order is Granted*

Cranmer confuses these three categories of protective orders. Cranmer propounded three requests for production of documents. Colorado Casualty does not oppose production; it merely asks the court to enter a confidential-discovery protective order that prevents Cranmer from publically disclosing trade

3

secrets. This dispute involves the second category of protective orders discussed above. In opposition, however, Cranmer argues that (1) Colorado Casualty failed to show "good cause" under Rule 26(c), (2) the proposed stipulated confidentiality agreement and protective order "unfairly shifts the burden" to Cranmer, and (3) the public has a right to access Colorado Casualty's discovery documents. (*See* Pl.'s Opp'n (#19) at 6:13, 13:3, 15:27). The first argument is unpersuasive and the latter two are misplaced under the circumstances.

First, Colorado Casualty did not fail to show "good cause." Rule 26(c)(1)(G) states that "[t]he court may, for good cause, issue an order . . . requiring that a trade secret or other confidential . . . information not be revealed or be revealed only in a specified way." To demonstrate "good cause" the moving party must demonstrate a particular need for the protection sought. *Caesars Entm't, Inc.*, 237 F.R.D. at 432. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman, Indus.*, 966 F.2d at 476.

Cranmer's discovery requests seek "any and all" documents "used to train or assist" Colorado Casualty's employees, "all" documents "related to an insurer's duty of good faith," and "all" documents "related to unfair claims handling practices." (Def.'s Opp'n (#19) at 3:12–20). Cranmer argues that Colorado Casualty failed demonstrate good cause because "[t]here is no explanation of why or how [Defendant's] claims handling materials are so unique from the rest of insurance claims handling world." (*Id*. at 6:24–26). This argument is mistaken.

Rule 26(c) does not require Colorado Casualty to demonstrate why its propriety information is better or different than its competitors' trade secrets. Colorado Casualty only needs to "articulate," with "specific examples," why its claim-handling information constitutes trade secrets that should be protected. *See Beckman, Indus*., 966 F.2d at 476. Colorado Casualty satisfied this standard. It argues that its claim handling guideless "are considered confidential trade secret information" and that its "position

4

in the marketplace would be harmed" if it is disclosed to competitors. (Roeder Decl. (#18-2) at ¶¶ 4–7). This satisfies Nevada law, which deems information a trade secret if, *inter alia*, the information is not known outside of the business and is kept confidential. *Frantz v. Johnson*, 116 Nev. 455, 358-59 (2000). Therefore, the court finds that good cause exists to protect Colorado Casualty's internal policies and procedures from disclosure under Rule 26(c)(1)(G).

Cranmer's second argument—(*viz.*, that the proposed stipulated confidentiality agreement and protective order "unfairly shifts the burden" to Cranmer)—misunderstands the nature of stipulated confidentiality agreements and protective orders. Stipulated confidentiality agreements are private agreements. If the agreement does not infringe the public's right of access, parties may stipulate to alternative discovery procedures in their discretion. *See* FED. R. CIV. P. 26(c)(1), 29(b). If good cause is shown, the court may enter the stipulated agreement as an order. *See* FED. R. CIV. P. 26(c).

These orders, like Colorado Casualty's proposed stipulated confidentiality agreement and protective order, routinely contain provisions that permit a party to unilaterally designate a document as confidential. These are known as "blanket orders." They expedite the discovery process by permitting litigants to freely exchange sensitive information without the risk of disclosure. *Public Citizen v. Liggett Group, Inc*., 858 F.2d 775, 780 (1st Cir. 1988); *In re Alexander Grant & Co., Litig*., 820 F.2d 352, 357 (11th Cir. 1987); *Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1122 (3rd Cir. 1986). This furthers the basic premise of federal practice, which is to "secure the just, speedy, and inexpensive determination of every action and proceeding." *See* FED. R. CIV. P. 1.

However, blanket orders do not alter the law governing discovery or, as Cranmer asserts, unfairly shift the burden under Rule 26. If a party designates a document as confidential pursuant to a blanket order, the opposing party may challenge that designation in court by filing an appropriate motion. When reviewing the motion, the court must apply the applicable law, including Rule 26, to

determine whether the document in controversy is protected from disclosure to the public. Cranmer's assertion that Colorado Casualty's proposed confidentiality agreement should not be entered because it alters Rule 26 is unavailing. The court has reviewed the proposed agreement, finds that it complies with *Kamakana*, 447 F.3d 1172 and Local Rule 10-5, and that good causes exists to enter a blank order to expedite discovery.

Cranmer's third argument—(*viz*., that the public has a right to access Colorado Casualty's discovery documents)—is also predicated on a misunderstanding of law. The public has a common law right to access judicial records. *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589 (1978). Historically, this included discovery documents because discovery was filed with the court. This is not the practice now. *See* LR 26-8 ("Unless otherwise ordered by the Court, written discovery, including responses thereto, and deposition transcripts, shall not be filed with the Court."). Today, parties retain discovery themselves. *See id*. No discovery has been filed with the court. Indeed, Colorado Casualty has not even produced the discovery in question to Cranmer. Therefore, the public right to access judicial records is not implicated here. *See Liggett Group, Inc*., 858 F.2d at 780 ("Certainly the public has no right to demand access to discovery materials which are solely in the hands of private party litigants.").

## II.  Cranmer's Motion to Compel

The court now turns to Cranmer's Motion to Compel. Thirty-five discovery requests are in controversy. Cranmer's Interrogatories ask, for instance, (1) whether Colorado Casualty "has ever been a party to any legal action in the State of Nevada, whether in federal or state court . . . during the last 5 years" and (2) Colorado Casualty to "[d]escribe the experience, training, and educational background of each person who evaluated, managed, and supervised the handling of Plaintiff's claim." (Pl.'s Mot. to Compel (#20) at 10:23–28, 12:23–28). His Requests for Production of Documents demand, in part, (1) "[c]opies of all personnel files of Defendant's employees," (2) [a]ny and all transcripts and recordings of

6

speeches or presentations . . . on the subject of insurance," and (3) documents from January 1, 2004 to the present, despite the fact that the underlying accident occurred on February 13, 2012. (*Id*. at 9:16–28, 19 –25). These requests misunderstand the scope of discovery under Rule 26(b)(1).

### A.  *The Scope of Discovery under Rule 26(b)(1)*

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits. It provides for two forms of discovery: party-controlled discovery and court-controlled discovery. The first sentence of Rule 26(b)(1) governs party-controlled discovery. It provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The second sentence of Rule 26(b)(1) governs court-controlled discovery. It provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

The distinction between party-controlled discovery and court-controlled discovery is designed to curb overbroad discovery. *See* FED. R. CIV. P. 26(b)(1), Advisory Comm. Notes (2000). If a party objects that a discovery request seeks information beyond material relevant to the parties' claims or defenses, the court becomes involved to determine (1) whether the discovery is relevant to the claims or defenses and, (2) if not, whether good cause exists for authorizing discovery relevant to the subject matter of the action. *Id*. Whether information is relevant to the "parties' claims or defense" or "the subject matter of the action" is determined by the totality of the circumstances. *See id*.

Rule 26(b)(1)'s third sentence provides the standard for determining whether information is "relevant" to a "claim or defense" or "the subject matter involved in the action". It states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." This means that information is discoverable—not if it is admissible under Federal Rule of Evidence 401—but if it is "reasonably calculated" to lead to Rule 401

evidence. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352–53 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). This standard provides for liberal discovery and allows a party to "fish" for evidence, if the party casts a "reasonably calculated" lure. FED. R. CIV. P. 26(b), Advisory Comm. Notes (1946) (citation omitted) ("[T]he Rules . . . permit 'fishing' for evidence as they should."); *Hickman*, 329 U.S. at 507 ("[The] discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

If, as here, a party resists discovery, Rule 37 authorizes the requesting party to file a motion to compel. FED. R. CIV. P. 37(a)(1). The motion must include a threshold showing that the moving party's discovery request is "relevant" and satisfies Rule 26(b)(1). *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1263 (3rd Cir. 1993); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citing *Oppenheimer Fund*, 437 U.S. at 352); *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570–71 (C.D. Cal. 2012). If the requesting party makes this showing of relevancy, the resisting party then carries a "heavy burden" of demonstrating why the request is improper. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

### B. *Cranmer Failed to Satisfy Rule 26(b)(1)*

Cranmer failed to satisfy his burden of making a threshold showing under Rule 26(b)(1) for two reasons. First, Cranmer contends that, in the context of a bad-faith insurance action, *BMW v. Gore*, 517 U.S. 559 (1996) and *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1009–10 (9th Cir. 2004) "require broader [discovery than that related to] the single [insurance] claim." (Doc. #20 at 7:12, 9:10). They do not. *BMW v. Gore* addressed punitive damages in the context of the Due Process Clause, not bad-faith insurance actions. In *Hangarter*, the Ninth Circuit applied *BMW v. Gore*. Neither

case permits what Cranmer requests: an audit of Colorado Casualty's files from January 1, 2004 to the present.

Second, Cranmer's discovery requests seek information that is relevant, not to "any party's claim or defense" (i.e., Rule 26(b)(1)'s first sentence), but to "the subject matter involved in the action" (i.e., Rule 26(b)(1)'s second sentence). Cranmer cannot independently inquire into a "matter relevant to the subject matter involved in the action." This requires leave of court and a demonstration of "good cause." *See* FED. R. CIV. P. 26(b)(1), Advisory Comm. Notes (2000). Here, Cranmer did not argue that good cause exists to inquire into the general subject matter of this action: bad faith insurance claims.

There is, however, one exception. Cranmer's Second Interrogatory seeks information regarding related bad act by Colorado Casualty. This discovery request is relevant to Cranmer's punitive damages claim. *See BMW v. Gore*, 517 U.S. 559 (1996). Therefore, Cranmer's Motion to Compel is granted with regard to his Second Interrogatory only.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Colorado Casualty's Motion for a Protective Order (#18) is GRANTED.

IT IS FURTHER ORDERED that the Colorado Casualty's proposed confidentiality agreement and protective order is APPOVED to the extent it is consistent with this order.

IT IS FURTHER ORDERED that David Cranmer's Motion to Compel (#20) is GRANTED in part and DENIED in part. Colorado Casualty must provide an answer to Cranmer's Second Interrogatory.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

9

IT IS FURTHER ORDERED that David Cranmer's request for an oral argument is DENIED. *See* LR 78-2.

IT IS SO ORDERED.

DATED this 20th day of November, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE